UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

JANE DOE,

      Plaintiff,

v.

NCL (BAHAMAS) LTD, A BERMUDA
CORPORATION, d/b/a NORWEGIAN
CRUISE LINE,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff JANE DOE by and through her undersigned counsel hereby sues the Defendant and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2.     **THE PLAINTIFF**. The Plaintiff JANE DOE is sui juris and is a resident of Hermosa Beach, California.

3.     **THE DEFENDANT.** The Defendant, NCL (BAHAMAS) LTD., A BERMUDA CORPORATION, d/b/A NORWEGIAN CRUISE LINE (Hereinafter referred to as "NCL") is a foreign corporation incorporated in Bermuda and is doing business in Miami Dade County, Florida. The Defendant is a citizen of Florida for purposes of diversity of citizenship under 28

1

U.S.C. § 1332. At all times material hereto, the Defendant owned and/or operated the ship on which the subject incident occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION.** The Defendant at all times material hereto, personally or through an agent or representative, in the County and in the District in which this Complaint is filed:

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

   b. had an office or agency in this state and/or county; and/or

   c. Engaged in substantial activity within this state; and/or

   d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

### OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF THE INCIDENT.** This incident occurred on February 20, 2020.

8. **LOCATION OF THE INCIDENT.** This incident occurred in Jane Doe's cabin assigned to her by NCL onboard the *Breakaway* cruise ship owned and operated by the Defendant.

2

9.     **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.**
At all times material hereto, the Plaintiff were passengers on the subject cruise ship described herein and, accordingly, were invitees while on the vessel.  The Plaintiff does not have a copy of the subject ticket, but the Defendant does.

10.    **DESCRIPTION OF THE INCIDENT.** Norwegian Cruise Line (NCL) has 17 ships which cruise worldwide and are marketed to both American and International passengers. The cruise line in its literature and advertisements markets, advertises and represents directly or indirectly that it provides a safe, secure and fun experience, and through its senior representatives, have represented to the press and the public, that cruising is a safe and secure experience or that cruising is at least as safe and secure as being on land.

11.    **THE BUSINESS MODEL; WORKING CONDITIONS AND THE FAILURE TO SCREEN, TRAIN, AND MONITOR.** The cruise line hires its crew from underdeveloped countries or from countries where the economies are bleak, and the unemployment rates are high. The cruise line chooses to hire from these countries to pay low wages and to get a willing workforce to work on a ship away from home for months at a time and for 7 days a week, often 12 to 14 hours a day.

12.    The cruise line utilizes agents or "hiring partners" in these countries and relies on the "hiring partners" to obtain background information on these candidates.  As the cruise line knows, it is all but impossible to obtain complete and reliable background information, medical and psychological records, and criminal records in such countries. And the "hiring partners" are paid per person actually hired by the cruise line. Accordingly, the cruise line places a disincentive on its "hiring partners" to conduct background checks which can result in exclusion of people for hire.

13.    The cruise line then fails examine and test—reasonably under these circumstances— the applicants for a job which involves this level of contact with the public.  The cruise line also fails

3

to train these crewmembers well, and then fails to monitor the crewmembers.  NCL's failure to select, train and control its male crew members and/or officers to stay away from female passengers. NCL fails to provide a safe environment for its female passengers. NCL fails to protect its female passengers from sexual assault, battery and rape by its crew members and/or officers. NCL fails to warn female passengers that NCL's male crew and/or officers represent a danger to female passengers.

14.      NCL hires male crew members and/or officers who are from a variety of different cultures.  These crew members and/or officers are away from their wives and girlfriends for months at a time.  The crew members and/or officers are inadequately screened and trained to deal with female passengers on its cruise ships. The cruise line's alleged "zero tolerance" policy for fraternization between crew and passengers and/or officers is not implemented and enforced on the cruise ships.

15.      The cruise invites 2000 to 3000 passengers and over 1000 crew on to an enclosed living situation.  The cruise line knows that crimes occur on their ships, including sexual assaults. The 11th Circuit Court of Appeals in *K.T. v. Royal Caribbean Cruises, Ltd.*, No. 17-14237, D.C. Docket 1:16-cv-25157-KMM (July 24, 2019) and *Doe v. Princess Cruise Lines, Ltd.*, 657 F. 3d 1204 (11th Cir. 2011) held that the cruise lines have been on notice a decade before Christa Fordan's cruise "that sexual assaults on cruise ships were a serious problem." *K.T. v. Royal Caribbean Cruises, Ltd.*, No. 17-14237, D.C. Docket 1:16-cv-25157-KMM (July 24, 2019) at 18; *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1208 n.4 (11th Cir. 2011).   The 11th Circuit Court of Appeals stated:

> Unfortunately, if congressional reports are to be believed, sexual assaults and other violent crimes on cruise ships are a serious problem. The House Subcommittee on Coast Guard and Maritime Transportation Staff has reported:

> At a hearing in March 2006 convened by the Committee on Government Reform, cruise industry executives testified that 178 passengers on North American cruises reported being sexually assaulted between 2003 and 2005. During that same period, 24 people were reported missing and four others reported being robbed.
>
> From fiscal year 2000 through June 2005, the FBI opened 305 case files involving "crimes on the high seas," and during those five years about 45% of those cases were sexual assaults that occurred on cruise ships.
>
> Salvador Hernandez, Deputy Assistant Director of the FBI, testified before Congress in 2007 about sexual and other physical assaults that have taken place on cruise ships: "Sexual assault and physical assaults on cruise ships were the leading crime reported to and investigated by the FBI on the high seas over the last five years, 55 percent and 22 percent respectively . . . ."

*Id*. At 1208 n.4. Yet, the cruise line failed and continues to fail to provide for the safety and security of its passengers during its cruises.  This failure of safety and security results in sexual assaults and personal injuries to its passengers including Jane Doe.

16.    **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN REGARD TO SEXUAL ASSAULT AND BATTERY.**  The general maritime law, state and federal, imposes a strict liability on the common carrier, including the cruise line herein, for sexual assault, sexual battery and rape.  This is a "special non-delegable duty owed by the carrier to the passenger".  *Doe v. Celebrity Cruises, Inc*., 394 F. 3d 891, 907 (11th Cir. 2004); *New Orleans and N.E.R. Co. v. Jopes,* 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891); *New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); thus, the cruise line has an "unconditional responsibility" for its employee's misconduct.  *Tullis v. Fidelity and Casualty Company of New York*, 397 F. 2d 22, 23 (5th Cir. 1968) as cited by the Eleventh Circuit Court of Appeals in *Doe v. Celebrity Cruises Inc*., 394 F. 3d at 909.  "It is a widely adopted rule that common carriers owe such an absolute duty to their passengers".  *See Doe v. Celebrity Cruises Inc*. 394 F. 3d at 911.

17.    **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.**  The Defendant owes a "duty to exercise reasonable care for the safety of its passengers"

including JANE DOE herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985).

18.     Despite these duties, knowledge and circumstances of hiring crew described herein, the cruise line failed and continues to fail to monitor and manage its crew members onboard the ship in a reasonable manner. NCL failed to perform initial and subsequent review of crew member's mental health, investigate crew members, train, test, counsel including proper testing, training continued testing and/or training. In sum, NCL failed to provide a reasonably safe environment for its passengers on the NCL *Breakaway* and to protect passengers including Jane Doe from sexual assault, battery and rape by its crew members.

19.     Further, to save its public image and profits rather than the safety and security of its passengers, the cruise line under-reports incidents to U.S. authorities, the press, and the public. These representations are false. They cause the American public, including the Plaintiff herein to choose this cruise line and when onboard to let down their guard as to the dangerous tendencies of crewmembers, and to rely on the security of the security personnel onboard the ship.

20.     NCL typically hires young men from developing world countries and pay these young men a minimal wage below the wage which would be required if they hired Americans for the same job. They place these young men on the ship for months at a time and require them to work 7 days a week for 12 to 14 hours a day, all in the name of saving some money. These young

men are way from their families and spouses and significant others for the months in which they are assigned to and living onboard the ships.

21.     Despite these circumstances, the cruise line does little or nothing to screen these young men before they are hired, to train the young men when they are hired, or to monitor the activities of these crewmembers after they are hired. Second, NCL poorly screened (or chose not to screen), established the criteria for hiring, poorly and unreasonably trained, and poorly and unreasonably monitored this and other cabin stewards, crew who the cruise line knew would have access to passenger cabins.

22.     On February 20, 2020, the day of the incident, Jane Doe went to the cabin assigned to her by the cruise line at approximately 7:00 p.m. Jane Doe found her assigned cabin door was open and saw an NCL steward making her bed.  NCL's cabin steward was working alone inside Jane Doe's cabin.  He was waiting for an opportunity to be alone with a female passenger so he could have sex and feel good.  Jane Doe entered the cabin to get dressed for dinner.  The steward identified this moment as his opportunity to get sex from Jane Doe.  This steward decided he was going to forcefully take and grab Jane Doe and do whatever he wanted to her.  He started this by forcefully kissing Jane Doe.  Jane Doe tried to get the steward off her but failed.  Instead, he turned around and closed the cabin door so he would not get caught, nobody could see or help Jane Doe before he got what he wanted from her.  The steward cornered and ambushed Jane Doe inside the cabin.  Doe could not reach for a phone and was petrified that if she screamed for help the steward would get mad and violently attack her. The steward approached Jane Doe again and tried to kiss her again.  Jane Doe begged, pleaded and tried to get the steward to leave and not hurt her.  Instead, the steward escalated his efforts and brutishly started tearing at Doe's clothing and tried to get his hands on her genitals. The Steward overpowered Doe, pulled down her bra, grabbed and sucked on her breasts. He grabbed Doe by the neck, pushed her onto the bed and held her down. The

Steward pulled out his erect pennis and shoved it into Doe's mouth and into her throat. He told Doe to be "a good girl". Doe choked, could not breathe, and feared for her life. Doe was terrified that she might pass out, that she would not be conscious for whatever came next and would not be able to protect herself at all. The Steward suddenly ejaculated in Doe's mouth and throat. He pulled himself out of Doe, put himself back into his pants and abruptly left the cabin. Jane Doe did not consent to these sexual acts.

23.    Jane Doe went to guest services and spoke to NCL crew member Melvin. Jane Doe asked Melvin as to what the process was to report a sexual assault. Jane Doe returned to guest services the following day and spoke with security on February 21, 2020. NCL's security told Jane Doe that her cabin was a crime scene and brought Jane Doe to NCL's shipboard infirmary. NCL conducted its investigation, which included review and preservation of the CCTV footage from the NCL's camera that was located outside the cabin NCL assigned to Jane Doe.

24.    As a direct result of NCL's negligence, Jane Doe has suffered severe and permanent injuries, including but not limited insomnia, depression, post-traumatic stress disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion. These are extremely painful and/or disabling injuries and have caused and will continue to cause severe disability with permanent impairment. These permanent injuries significantly affect the life and abilities of Jane Doe.

## COUNT I
## STRICT LIABILITY FOR SEXUAL ASSAULT AND/OR BATTERY

25.    The Plaintiff Jane Doe hereby adopts and realleges each and every allegation in paragraphs 1 through 24.

26.    On the date of the subject incident, NCL's employee, committed the intentional acts of sexual assault and/or sexual battery on Jane Doe, a passenger. NCL's cabin steward was working alone inside Jane Doe's cabin. He was waiting for an opportunity to be alone with a

8

female passenger so he could have sex and feel good. Jane Doe entered the cabin to get dressed for dinner. The steward identified this moment as his opportunity to get sex from Jane Doe. This steward decided he was going to forcefully take and grab Jane Doe and do whatever he wanted to her.  He started this by forcefully kissing Jane Doe.  Jane Doe tried to get the steward off her but failed.  Instead, he turned around and closed the cabin door so he would not get caught, nobody could see or help Jane Doe before he got what he wanted from her.  The steward cornered and ambushed Jane Doe inside the cabin.  Doe could not reach for a phone and was petrified that if she screamed for help the steward would get mad and violently attack her. The steward approached Jane Doe again and tried to kiss her again.  Jane Doe begged, pleaded and tried to get the steward to leave and not hurt her.  Instead, the steward escalated his efforts and brutishly started tearing at Doe's clothing and tried to get his hands on her genitals. The Steward overpowered Doe, pulled down her bra, grabbed and sucked on her breasts. He grabbed Doe by the neck, pushed her onto the bed and held her down. The Steward pulled out his erect pennis and shoved it into Doe's mouth and into her throat. He told Doe to be "a good girl". Doe choked, could not breathe, and feared for her life.  Doe was terrified that she might pass out, that she would not be conscious for whatever came next and would not be able to protect herself at all. The Steward suddenly ejaculated in Doe's mouth and throat.  He pulled himself out of Doe, put himself back into his pants and abruptly left the cabin.  Jane Doe did not consent to these sexual acts.

27.    **DAMAGES**: NCL's employee's intentional acts of sexual assault and/or battery of Jane Doe proximately caused permanent injuries and damages to Jane Doe in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-

economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. Jane Doe has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE Jane Doe demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

28.     The Plaintiff Jane Doe hereby adopts and realleges each and every allegation in paragraphs 1 through 24.

29.     This is an action for NCL's negligent infliction of emotional destress. NCL's negligence caused Jane Doe mental distress as a result of being violently physical attacked, sexually assaulted and/or battered by NCL's crew member. NCL anticipated and foresaw that crimes such as battery, sexual assault and/or sexual battery would be perpetrated by crew members on passengers aboard its vessels.  NCL knew or should have known of the high risk to its passengers of crime and injury aboard the vessels.

30.     **DUTIES OWED BY NCL**: NCL owes a "duty to exercise reasonable care for the safety of its passengers," including Jane Doe herein. *See Hall v. Royal Caribbean Cruises, Limited*,

2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The Defendant knew, or in the exercise of reasonable care should have known, that on board the cruise ships there have been numerous sexual assaults, sexual batteries, rapes, and attacks perpetrated by crew and/or officers on passengers. Given the circumstances of the hiring process, the job itself, and the conduct of the crew onboard the ships—more fully described herein—sexual assault, sexual batteries, rapes and attacks perpetrated by crew members is an ongoing and repetitive problem.

31.      NCL had a duty to use reasonable care under the circumstances to maintain their ship in a reasonably safe condition commensurate with the activities conducted thereon and to prevent harm to its passengers resulting from the foreseeable sexual assault, battery and rape by crew and/or officers.

32.      In particular, the Defendant had a duty to take such precautions as were reasonably necessary to protect its passengers from sexual assault, sexual battery, rape and physical battery and rape which was reasonably foreseeable.

33.      NCL had experienced and had actual knowledge of assaults and batteries and sexual crimes, and other violence between passengers and between passengers and crew and anticipated and foresaw that crimes would be perpetrated on passengers aboard cruise ships. NCL knew or should have known that the high risk to its passengers of crime and injury aboard NCL vessels.

34.      NCL's cabin steward was working alone inside Jane Doe's cabin. He was waiting for an opportunity to be alone with a female passenger so he could have sex and feel good. Jane Doe entered the cabin to get dressed for dinner. The steward identified this moment as his opportunity to get sex from Jane Doe. This steward decided he was going to forcefully take and grab Jane Doe and do whatever he wanted to her. He started this by forcefully kissing Jane Doe.

Jane Doe tried to get the steward off her but failed.  Instead, he turned around and closed the cabin door so he would not get caught, nobody could see or help Jane Doe before he got what he wanted from her.  The steward cornered and ambushed Jane Doe inside the cabin. Doe could not reach for a phone and was petrified that if she screamed for help the steward would get mad and violently attack her. The steward approached Jane Doe again and tried to kiss her again. Jane Doe begged, pleaded and tried to get the steward to leave and not hurt her. Instead, the steward escalated his efforts and brutishly started tearing at Doe's clothing and tried to get his hands on her genitals. The Steward overpowered Doe, pulled down her bra, grabbed and sucked on her breasts. He grabbed Doe by the neck, pushed her onto the bed and held her down. The Steward pulled out his erect pennis and shoved it into Doe's mouth and into her throat.  He told Doe to be "a good girl". Doe choked, could not breathe, and feared for her life. Doe was terrified that she might pass out, that she would not be conscious for whatever came next and would not be able to protect herself at all.  The Steward suddenly ejaculated in Doe's mouth and throat. He pulled himself out of Doe, put himself back into his pants and abruptly left the cabin.  Jane Doe did not consent to these sexual acts.

35.     Because NCL's crew member attacked, sexually assaulted and/or sexually battered Jane Doe she felt discomfort, tenderness, and soreness to her breast, body and mouth. Jane Doe advised NCL that she had been sexually attacked by an NCL crew member.

36.     The Defendant cruise line through the actions and conduct of its employee or agent, actual or apparent is vicariously or liable for the negligent infliction of emotional distress. The employee or agent, actual or apparent, of the Defendant cruise line negligently inflicted emotional distress upon Jane Doe by its actions and conduct of sexual assault and battery.

37.     **NCL'S BREACHED ITS DUTY**: NCL breached its duty to hire, select, retain and/or monitor its crew members and breached its duties to Jane Doe by its actions and conduct.

NCL failed to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

38.     **PROXIMATE CAUSE**: NCL's failure to properly hire, select, retain and/or monitor its crew members put Jane Doe in high risk of crime and personal injury including sexual battery and/or assault proximately caused Jane Doe's injuries. Had NCL properly hire, select, retain and monitor its crew members Jane Doe would never have been sexually assaulted and/or battered and suffer injuries including severe emotional distress.

39.     Jane Doe was involved in the events causing the negligent injury, that is, Jane herein was the victim of the sexual assault and/or sexual battery. Jane Doe has suffered a discernable physical injury and/or severe emotional distress.  The physical injury suffered by Jane Doe was caused by the physical and psychological trauma.  Jane Doe has suffered a discernable physical injury when NCL's crew member violently attacked, sexually assaulted and/or sexually battered Jane Doe inside her cabin. Jane Doe suffered injuries to her breast, body, mouth and endangered her health and life.  NCL's crew member's conduct caused Jane Doe severe or extreme emotional distress that is substantial and/or enduring quality including but not limited to Post Traumatic Stress Disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion. These are extremely painful and/or disabling injuries and have caused and will continue to cause severe disability with permanent impairment. These permanent injuries significantly affect the life and abilities of Jane Doe.

40.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to Jane Doe in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the

past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing. JANE DOE has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE Jane Doe demands Judgment against NCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41.     The Plaintiff Jane Doe hereby adopts and realleges each and every allegation in paragraphs 1 through 24.

42.     This is an action for NCL's intentional infliction of emotional destress.  NCL is vicariously liable for NCL's crew member's actions which caused Jane severe mental distress as a result of being violently physical attacked, sexually assaulted and/or sexually battered by NCL's crew member. NCL anticipated and foresaw that crimes such as battery, sexual assault and/or sexual battery would be perpetrated by crew members on passengers aboard its vessels. NCL knew or should have known of the high risk to its passengers of crime and injury aboard the vessels.

43.    NCL knew or should have known that sexual assault and/or battery is intentional or reckless conduct where the perpetrator knew or should have known that emotional distress would likely result. Sexual assault and/or battery is outrageous conduct that goes beyond all bounds of decency and is to be regarded as odious and utterly intolerable in a civilized community. Sexual assault and/or battery can cause and did cause emotional distress to Jane Doe and the emotional distress was severe.

44.    **EXTREME AND OUTRAGEOUS CONDUCT**. NCL's cabin steward was working alone inside Jane Doe's cabin.  He was waiting for an opportunity to be alone with a female passenger so he could have sex and feel good.  Jane Doe entered the cabin to get dressed for dinner. The steward identified this moment as his opportunity to get sex from Jane Doe.  This steward decided he was going to forcefully take and grab Jane Doe and do whatever he wanted to her.  He started this by forcefully kissing Jane Doe.  Jane Doe tried to get the steward off her but failed.  Instead, he turned around and closed the cabin door so he would not get caught, nobody could see or help Jane Doe before he got what he wanted from her. The steward cornered and ambushed Jane Doe inside the cabin.  Doe could not reach for a phone and was petrified that if she screamed for help the steward would get mad and violently attack her. The steward approached Jane Doe again and tried to kiss her again.  Jane Doe begged, pleaded and tried to get the steward to leave and not hurt her.  Instead, the steward escalated his efforts and brutishly started tearing at Doe's clothing and tried to get his hands on her genitals. The Steward overpowered Doe, pulled down her bra, grabbed and sucked on her breasts.  He grabbed Doe by the neck, pushed her onto the bed and held her down. The Steward pulled out his erect pennis and shoved it into Doe's mouth and into her throat.  He told Doe to be "a good girl".  Doe choked, could not breathe, and feared for her life.  Doe was terrified that she might pass out, that she would not be conscious for whatever came next and would not be able to protect herself at all.  The Steward suddenly ejaculated in

15

Doe's mouth and throat.  He pulled himself out of Doe, put himself back into his pants and abruptly left the cabin.  Jane Doe did not consent to these sexual acts.

45.      This attack perpetrated by NCL's crew member constitutes extreme and outrageous conduct that exceed all bounds that usually tolerated by civilized society.

46.      **DELIBERATE OR RECKLESS INFLICTION OF METAL SUFFERING**. The Defendant cruise line through the actions and conduct of its employee or agent, actual or apparent is vicariously or strictly liable for the negligent infliction of emotional distress. The conduct of NCL's crew member was directed at Jane Doe. The employee or agent, actual or apparent, of the Defendant cruise line intentionally inflicted emotional distress upon Jane Doe by its actions and conduct of sexual assault and battery. NCL's crew member intended to cause or recklessly disregarded the probability of causing Jane Doe emotional distress by his attack, sexual assault and/or sexual battery on JANE DOE.

47.      **SEVERE OR EXTREME EMOTIONAL DISTRESS**.  NCL's crew member's conduct caused Jane Doe severe emotional distress when he sexually assaulted and/or battered her in her cabin.   JANE DOE suffered severe emotional distress during the attack during which she reasonably believed she would be raped and ultimately suffered injuries that could endangered her health and life.  NCL's crew member's extreme and/or outrageous conduct caused Jane severe or extreme emotional distress that is substantial and/or enduring quality including but not limited to Post Traumatic Stress Disorder and/or severe anxiety.

48.      **PROXIMATE CAUSE**: NCL's crew member's outrageous conduct of sexual assault and/or battery proximately cased Jane Doe to experience severe and extreme emotional distress. As a result of this incident Jane Doe suffers from psychological trauma including but not limited Post Traumatic Stress Disorder and/or severely debility anxiety.

49. **DAMAGES**: NCL's intentional infliction of emotional distress proximately caused permanent injuries and damages to Jane Doe in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. Jane Doe has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE Jane Doe demands Judgment against NCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN

50. The Plaintiff Jane Doe hereby adopts and re-alleges each and every allegation in Paragraphs 1- 24.

51. This is an action for negligence of NCL's failing to warn passengers, including Jane Doe of known dangers beyond the point of debarkation in places where passengers are invited or

reasonably expected to visit.  NCL anticipated and foresaw that crimes would be perpetrated on passengers aboard its vessels.  NCL knew or should have known of the high risk to its passengers of crime and injury aboard the vessels is enhanced by copious quantities of alcohol on its vessels.

52.    **DUTIES OWED BY NCL**: NCL owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

53.    NCL at all relevant times as well as other major cruise lines have been required to keep records of all complaints about certain crimes which include sexual assault, sexual battery and/or rape.  Cruise lines including NCL must report complaints of sexual assault and rape to the FBI and the Department of Transportation.  *See* 46 U.S.C. §3507(g)(1)(A); 46 U.S.C. §3507(k)(1); 46 U.S.C. §3507(g)(3)(A)(i),(ii). The Department of Transportation has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about crimes, including sexual assault and rape that occur on board cruise vessels.  46 U.S.C. §3507(g)(4).  These compilations are titled Cruise Line Incident Reports and maintained on the United States Department of Transportation website at https://www.transportation.gov/mission/safety/cruise-line-incident-reports.  According to the Department of Transportation sexual assault is the most common crime reported on cruise

ships.  For example, in 2018 cruise lines reported 120 crimes to the Department of Transportation, 82 of which involved sexual assaults.

54.     It is expected that passengers including Jane Doe will interact with NCL's crew members throughout NCL's cruises. NCL documents and as a matter of law must report prior incidents involving rape, sexual assault, assault and other crimes which may include prior shipboard safety meetings; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; prior investigative reports as well as through other documentation.  NCL trains its crew members about occurrences and procedures regarding rape, sexual assault, assault and other crimes.  Because NCL knows that the most commonly reported crime on cruise ships is sexual assault, documents prior incidents and trains its crew members about occurrences and procedures regarding rape, sexual assault, assault and other crimes, NCL knew or should have known to warn its passengers including Jane Doe about the high risk to its passengers of crime and injury aboard the vessels.  Jane Doe was unaware she needed to take any special precautions while aboard NCL's ship.

55.     **<u>NCL BREACHED ITS DUTY</u>**: NCL breached its duty to warn Jane Doe of dangerous condition and breached its duties to Jane Doe by its actions and conduct.  NCL through its crew members failed to warn its passengers, including Jane Doe about the high risk to passengers of crime and injury aboard NCL's vessels. NCL failed to distribute any written materials and/or memos; provide warnings on its website; make audible announcements; play video warning messages or other types of warnings to its passengers that they are at high risk of crime and injury aboard NCL's vessels. NCL also failed to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. NCL's

violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

56.     **PROXIMATE CAUSE**: NCL's failure to properly warn Jane Doe of the high risk of crime and personal injury including sexual assault and/or assault proximately caused Jane Doe's injuries.  Had NCL properly warned Jane Doe of the dangerous condition, Jane Doe would never have taken the subject cruise and/or permitted a crew member to enter her cabin while she was alone.  Jane Doe therefore would never have been sexually assaulted and/or assaulted.

57.     **INJURIES**. As a direct and proximate result of NCL's negligence, Jane Doe suffered injuries which include but are not limited to including but not limited to insomnia, depression, post-traumatic stress disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion. These are extremely painful and/or disabling injuries and have caused and will continue to cause severe disability with permanent impairment. These permanent injuries significantly affect the life and abilities of Jane Doe.

58.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to Jane Doe in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing. Jane Doe has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, JANE DOE demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including

medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT MISREPRESENTATION**

59.     The Plaintiff Jane Doe hereby adopts and re-alleges each and every allegation in Paragraphs 1-24.

60.     The Defendant negligently misrepresented that it would provide a safe cruise ship to its passengers including Jane Doe.  The Defendant represented that its cruise is without worries even though its cruise ships are confined spaces in waters off of sometimes remote and sometimes third world countries.  The Defendant cruise line's misrepresentations include the following:

61.     NCL represents that "Norwegian Cruise Line has a zero tolerance for crime on board its vessels."[1]  NCL also represents to passengers that it "endeavors to provide reasonable protection for your comfort and safety on board its ships".[2]

62.     NCL's website also represents that NCL "will provide a high quality cruise product for guests by offering a memorable experience at sea, meticulous attention to detail, and an inviting ambience on every voyage."[3]  As part of this promise, NCL represents that "[i]n support of this mission, it is imperative that our operations are conducted safely, securely and with sensitivity to the environment around us".[4]  To fulfill this commitment NCL promises that it will "[s]trive to

---

[1] https://www.ncl.com/sites/default/files/Security_Guide_040517_2.pdf
[2] https://www.ncl.com/about/additional-terms-and-conditions#s5m16
[3] https://www.ncl.com/sites/default/files/env_policy_posting_082018.pdf
[4] https://www.ncl.com/sites/default/files/env_policy_posting_082018.pdf

eliminate accidents, injuries and damage to property by making the health, **security and safety** of our guests and crew our **first priority**."[5]

63.    NCL's website provides contact numbers and website information for the FBI in Washington D.C., the United States Coast Guard National Command Center and National Sexual Assault Hotline.  NCL misleads prospective passengers and passengers to believe they can rely on NCL to provide a safe and secure ship.  However, NCL fails to offer any information as to what, if any crime prevention is available to prospective passengers and passengers in NCL's "Security Guide".    Instead NCL provides crime response information of highly regarded and respected federal agencies and a sexual assault hotline to lure prospective passengers and passengers into believing NCL provides safe and secure ships. Unbeknownst to prospective passengers and passengers, they may not be able to make calls to the FBI, USCG and/or sexual assault hotline while at sea.  NCL misleads passengers to believe that they may contact the FBI or USCG at any time during the voyage.

64.    The Defendant cruise line made these representations with that intent that its passengers including Jane Doe herein, rely upon them in deciding whether to purchase tickets to go onboard its cruise ships.

65.    The representations made by the cruise line were false and misleading. First, the subject cruise ship did not provide a safe and/or secure ship for its passengers including Jane Doe. Further, the cruise line through its omission of materials facts about the high risk of crime and injury including but not limited to rape, sexual assault and assault, and its unwillingness and its failure to properly retain, hire, train, monitor, and provide reasonable procedures for its staff as misrepresented the quality of its ships' safety and security thereon.

---

[5] https://www.ncl.com/sites/default/files/env_policy_posting_082018.pdf

66.     Jane Doe relied on NCL's representations that it provided a safe and secure ship when Jane Doe decided to take the subject cruise.  Jane Doe would not have selected have decided to go on the cruise if it had not been for the representations made by NCL with respect to the safety and security of its ships.

67.     This reliance was to the detriment of Jane Doe because the Defendant cruise line failed to provide a safe and secure ship, and failed to provide in its warnings and sufficient information about the fact that it failed to provide a reasonably safe and secure ship, failed to properly retain, hire, train, monitor and provide reasonable procedures for its staff and misrepresented the quality of its ships safety and security thereon.

68.     The Defendant cruise line's misrepresentation included failure to disclose to the public and Jane Doe herein the fact that under the cruise line's lack of resources and under manning safety and security of passengers, failure to disclose its knowledge of the high risk of crime and injury to passengers on cruise ships, the cruise line's failure to provide a reasonably safe and secure ship as represented on its website, failure to properly retain, hire, train, monitor and provide reasonable procedures as represented by NCL. NCL's misrepresentations failed to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*

69.     **NCL BREACHED ITS DUTY**: NCL breached its duty to reasonably represent to Jane Doe the dangerous condition onboard NCL's ship and breached its duties to Jane Doe by its actions and conduct. NCL negligently misrepresented that it would provide a safe and secure cruise ship to its passengers including Jane Doe.  Jane Doe relied on NCL's misrepresentations to her detriment.

70.    **PROXIMATE CAUSE**: NCL's failure to reasonably represent to Jane Doe the high risk of crime and personal injury including rape, sexual assault and/or assault proximately caused Jane Doe's injuries. Had NCL properly represented to Jane Doe of the dangerous condition, Jane Doe would never have taken the subject cruise and/or allowed an NCL crew member into her cabin while she was alone. Jane Doe therefore would never have been sexually assaulted and/or battered.

71.    **INJURIES**. As a direct and proximate result of NCL's negligence, Jane Doe suffered injuries which include but are not limited to including but not limited to insomnia, depression, post-traumatic stress disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion.  These are extremely painful and/or disabling injuries and have caused and will continue to cause severe disability with permanent impairment.  These permanent injuries significantly affect the life and abilities of Jane Doe.

72.    **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to JANE DOE in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing. Jane Doe has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE Jane Doe demands Judgment against NCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the

past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**NEGLIGENT HIRING**

73.     The Plaintiff Jane Doe adopts and realleges each and every allegation in paragraphs 1 through 24.

74.     This is an action for negligent hiring of the NCL crew member who sexually assaulted and/or battered the Plaintiff on board the *Breakaway*.

75.     **DUTIES OWED BY THE DEFENDANT.**  The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991).

76.     At all times material to this action, NCL owed Plaintiff a duty to exercise reasonable care under the circumstances. NCL's duty includes the duty to provide safe and secure cruise ship for all its passengers. NCL's duty also includes the duty to vet and hire a crew and/or personnel that are fit to serve on NCL's cruise ships. This means NCL must adequately and/or reasonably vet and hire crew without criminal backgrounds and/or history of committing sexual assault and/or battery and instead have the proper demeanor, professionalism and good character to appropriately engage with cruise passengers in a professional manner.

77.     To comply with its duty of reasonable care, NCL was required to perform the appropriate investigation into the qualifications and background of its cruise personnel to ensure that they were competent and fit to perform their duties and not attack, sexually assault and/or batter cruise passengers. Such investigation should have included, *inter alia*:

a.   Failing to reasonably screen and/or investigate the credentials, qualifications, demeanor and/or criminal background or history of crew members;

b.   Failing to institute reasonable procedures and/or an adequate screening and/or investigative procedures to hire cruise personnel;

c.   Failing to hire and/or rely on "hiring partners" and/or third parties to interview, screen, hire and/or otherwise investigate crew members.

78.     NCL breached its duty by hiring the crew member who sexually assaulted and/or battered the Plaintiff when it knew or should have known that he was incompetent or unfit to serve on NCL's cruise ship.

79.     NCL knew or should have known that the crew member that attacked the Plaintiff lacked the necessary demeanor, background, education, training, experience, procedures, attentiveness, and/or competency to interact with cruise passengers.

80.     The incompetence or unfitness the crew member who attacked and/or sexually assaulted and/or battered the Plaintiff proximately caused Plaintiff's injuries. As a direct and proximate result of NCL's negligent hiring of the crew member that attacked and/or sexually assaulted and/or battered the Plaintiff, the Plaintiff has suffered damages in the past that will continue into the future including but not limited to insomnia, depression, post-traumatic stress disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion.  As a result of the negligence, the Plaintiff was physically attacked and/or sexually assaulted by NCL's crew member.

81.    **INJURIES**. As a direct and proximate result of NCL's negligence, Jane Doe suffered injuries which include but are not limited to including but not limited to insomnia, depression, post-traumatic stress disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion.  These are extremely painful and/or disabling injuries and have caused and will continue to cause severe disability with permanent impairment. These permanent injuries significantly affect the life and abilities of Jane Doe.

82.    NCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

27

## COUNT VII
## NEGLIGENT RETENTION

83.   The Plaintiff Jane Doe adopts and realleges each and every allegation in paragraphs 1 through 24.

84.   This is an action for negligent retention of the NCL crew member who sexually assaulted and/or battered the Plaintiff on board the *Breakaway*.

85.   **DUTIES OWED BY THE DEFENDANT.**  The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991).

86.   At all times material to this action, NCL owed Plaintiff a duty to exercise reasonable care under the circumstances. NCL's duty includes the duty to provide safe and secure cruise ship for all its passengers. NCL's duty also includes the duty to retain crew and/or personnel that are fit to serve on NCL's cruise ships. This means NCL must retain crew without criminal backgrounds and/or history of committing sexual assault and/or battery and instead have the proper demeanor, professionalism and good character to appropriately engage with cruise passengers in a professional manner.

87.   To comply with its duty of reasonable care, NCL was required to perform the appropriate investigation into the qualifications and background of its cruise personnel to ensure that they were competent and fit to perform their duties and not attack, sexually assault and/or batter cruise passengers. Such investigation should have included, *inter alia*:

a. Failing to monitor the credentials, qualifications, demeanor and/or criminal background or history of crew members;

b. Failing to monitor, screen and/or otherwise investigate the performance of active crew members;

c. Failing to institute reasonable procedures and/or an adequate screening and/or investigative procedures to retain cruise personnel;

d. Retaining crew members that are known to act inappropriately with passengers and/or attack, sexually assault and/or batter passengers;

e. Failing to periodically supervise, audit and/or otherwise observe crew members' interactions with cruise passengers to ensure they are appropriate and/or professional;

f. Failing to monitor the manner in which crew members interact with cruise passengers.

88. NCL breached its duty by retaining the crew member who sexually assaulted and/or battered the Plaintiff when it knew or should have known that he was incompetent or unfit to serve on NCL's cruise ship.

89. NCL knew or should have known that the crew member that attacked the Plaintiff lacked the necessary demeanor, background, education, training, experience, procedures, attentiveness, and/or competency to interact with cruise passengers.

90. The incompetence or unfitness the crew member who attacked and/or sexually assaulted and/or battered the Plaintiff proximately caused Plaintiff's injuries. As a direct and proximate result of NCL's negligent retention of the crew member that attacked and/or sexually assaulted and/or battered the Plaintiff, the Plaintiff has suffered damages in the past that will continue into the future including but not limited to insomnia, depression, post-traumatic stress

disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion. As a result of the negligence, the Plaintiff was physically attacked and/or sexually assaulted by NCL's crew member.

91. **INJURIES**. As a direct and proximate result of NCL's negligence, Jane Doe suffered injuries which include but are not limited to including but not limited to insomnia, depression, post-traumatic stress disorder, severely debilitating anxiety, rapid heartbeat, and physical exhaustion. These are extremely painful and/or disabling injuries and have caused and will continue to cause severe disability with permanent impairment. These permanent injuries significantly affect the life and abilities of Jane Doe.

92. NCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental

anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:   _s/ John H. Hickey_____
      **JOHN H. HICKEY (FBN 305081)**
      hickey@hickeylawfirm.com
      **SARAH A. LOBEL (FBN 88716)**
      slobel@hickeylawfirm.com
      **Hickey Law Firm, P.A.**
      1401 Brickell Avenue, Ste. 510
      Miami, Florida 33131-3504
      Telephone: (305) 371-8000
      Facsimile: (305) 371-3542
      *Attorneys for the Plaintiff*